SWIFT, Judge.
This is an action by plaintiff to recover funds allegedly loaned to her former husband, the defendant’s son, who is now deceased. From a judgment of $2,657.67 in favor of plaintiff, the defendant has appealed.
Jeannette M. Troxler, the plaintiff, married Paul A. Troxler on August 18, 1951. They voluntarily separated on May 7, 1960, and a divorce decree was rendered on July 13, 1962, based on the parties having lived separate and apart continuously for over two years.
Paul Troxler became ill, and his last regular employment was in October of 1960. Thereafter, he earned very little and was obviously in necessitous circumstances.
At his death on January 21, 1963, Mr. Troxler left a $10,000.00 government life insurance policy which he had taken out while in the Marine Corps. The beneficiaries named therein were his mother, Mrs. Emelda Cubbage, defendant herein, and his grandmother. However, both plaintiff and defendant (and probably the insured) thought his wife was the beneficiary of the policy. The grandmother died before Mr. Troxler, and consequently $5,-000.00 of the insurance proceeds became payable to his succession. Defendant opened her son’s succession, accepted it unconditionally and was placed in possession of these funds. Thus, she became legally responsible for the debts of Paul Troxler. LSA-C.C. Article 1013.
At the trial plaintiff introduced in evidence cancelled checks and other writings which clearly confirmed her testimony that she had advanced money to her husband for his living expenses and had satisfied certain of his obligations during the period of their separation prior to his death. The trial judge concluded that these advances and certain secretarial services furnished for decedent’s account (totalling $3,331.29, less $673.62 which was repaid by twelve checks received by plaintiff from Mr. *172 Troxler during this period) were made by plaintiff as loans with the expectancy of being reimbursed from the proceeds of her husband’s government insurance policy. Letters written by Paul Troxler to plaintiff established that he led her to believe she had been named as beneficiary of the policy and was to be repaid thereby, at least for the insurance premiums which she paid.
Plaintiff contends that her earnings after the date of the parties’ voluntary separation were her separate property, and because all of the advances were made to her husband as loans she is entitled to reimbursement from his heir.
Among other defenses, the defendant denies that plaintiff loaned any money to the deceased, also that there is any legal obligation on the part of a husband to repay his wife advances made for his living expenses, since LSA-C.C. Art. 119 requires both husband and wife to support and assist each other during the marriage.
LSA-C.C. Art. 2334 expressly provides the earnings of the wife when living separate and apart from her husband, although not separated by judgment of court, and her earnings when carrying on a business, trade, occupation or industry separate from her husband, are her separate property. That plaintiff established a residence separate from that of her husband in May, 1960, and never thereafter resumed the marital relationship is undisputed. She was continuously employed, and clearly her earnings after the voluntary separation were her separate property.
LSA-C.C. Art. 2391 gives the wife, even during marriage, a right of action against her husband for the restitution of her par-aphernal effects and their fruits. This right of restitution has been held absolute, whether or not the separate and parapher-nal effects were given by the wife to her husband for his use or for the community. Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (1958).
LSA-C.C. Art. 119 does not require a different result. Although that article seems to impose a duty on the wife to expend her separate funds in support of her husband when he is unable to support himself, it does not preclude reimbursement of the wife’s separate estate by the community if sufficient property is acquired subsequently by the latter estate.
Nor does the Succession of Turgeau, 130 La. 650, 58 So. 497 (1912), support defendant’s contention that no reimbursement of living expenses furnished by a wife living separate and apart from a destitute husband is required where he has promised to repay such advances. Although the court mentioned the wife’s obligation to furnish support where the husband was ill and destitute of all means of support, it impliedly recognized her right to be reimbursed therefor where the husband promised repayment as her claim was finally denied because she failed to prove same in accordance with Articles 2277 and 2278 of our Civil Code and Act No. 207 of 1906, the source of LSA-R.S. 13:3721 and 3722. The same principle is involved when children furnish services to parents, whom they are obliged to maintain when in need by LSA-C.C. Art. 229. Recovery is permitted when they can prove an agreement by the parents to pay for such services. Story v. Story, 131 So.2d 913 (La. App. 1 Cir. 1961).
Counsel for defendant alternatively contends that plaintiff has failed to prove her claim against her deceased husband in accordance with LSA-R.S. 13:3721 and 3722.
Section 3721 of Title 13 of our Revised Statutes excludes parol proof of any debt or liability of a deceased person against his succession representative, heirs or legatees where suit was not brought against the deceased, unless a suit to enforce the debt is filed against his successor within one year of the death of the deceased. No problem in this regard is presented, however, as this suit was filed well within a year of plaintiff’s former husband’s demise.
*173 LSA-R.S. 13:3722 provides that when parol evidence is admissible under Section 3721 the debt or liability “must be proved by the testimony of at least one creditable witness other than the claimant, and other corroborating circumstances.” As a corroborating witness plaintiff produced Mr. Denis Barry, a long time friend of the deceased. His testimony was to the effect that Mr. Troxler told him his wife was lending him money from time to time to pay his expenses. Other corroborating circumstances were the plaintiff’s cancelled checks payable to the decedent for most of the loans, his cancelled checks to her reflecting repayment of part of the indebtedness and admissions by the deceased and also the defendant that they thought plaintiff was to be reimbursed, at least for the premiums paid by her on his life insurance policy, through being the beneficiary thereof.
Considering the separation of the parties, the decedent’s lack of means, the corroboration of the plaintiff’s convincing testimony by a close friend of the decedent and the other evidence mentioned, we fully agree with the conclusion of the trial judge that plaintiff has sustained the burden of proving her claim in the manner required by law. Succession of McCloskey, 144 La. 438, 80 So. 650, 651 (1919); Peltier v. Thibodaux, 175 La. 1026, 144 So. 903 (1932); Succession of Caranne, 147 So. 562, 563 (La.App.1933); Elliott v. Cored, 158 So. 698 (La.App.1935); Succession of Berthelot, 24 So.2d 185 (La.App. 1 Cir. 1945); Story v. Story, supra.
The defendant’s contentions that the award exceeds the amount of the loans alleged in the pleadings and that it included car expenses to which she was not entitled to reimbursement are likewise without merit.
For the foregoing reasons the judgment of the lower court is affirmed at appellant’s cost.
Affirmed.