BROWN, Chief Judge.
| ¶ This appeal arises from a jury verdict in favor of plaintiff, Margie Kalil, and against defendant, HCA Health Services of Louisiana d/b/a North Monroe Medical Center, in the amount of $483,274.21. For the reasons stated herein, we affirm.

Facts and Procedural Background

On April 28, 2003, Margie Kalil was experiencing chest pains and went to her internal medicine physician, Dr. Charles Knight. After running some tests, Dr. Knight admitted Ms. Kalil to the North Monroe Medical Center and ordered that she be placed in ICU and kept on strict bed rest. The ICU, however, was overcrowded so plaintiff was sent to the emergency room. Ms. Kalil remained in the emergency room until she had a heart catheterization and stent placement. These procedures were performed by Dr. Gregory Sampognaro. Following the stent placement, Dr. Sampognaro wrote an order for plaintiff to be transferred to the coronary care unit and kept on flat bed rest for six hours.
According to plaintiff, flat bed rest and complete bed rest are different in that flat bed rest requires lying flat with the leg fully extended to prevent bleeding problems from a catheter insert into the leg. Dr. Knight’s original order of bed rest and Dr. Sampognaro’s subsequent order of flat bed rest are at issue with regard to the question of third-party fault.
Regardless of which order was in effect, six hours after her catheter procedure Ms. Kalil was awakened by Rae Wegner, the R.N. assigned to her. Ms. Wegner had plaintiff get out of bed and go to the restroom. While out of bed Ms. Kalil fell and struck her head. She was transferred to St. |2Francis Medical Center for neuro-surgical evaluation and she remained there for two weeks.
*513 As a result of the fall Ms. Kalil suffered neurological injuries, including a right temporal parietal intracerebral hemorrhage, contusion of the brain, subdural hematoma, permanent hearing loss, and tinnitus. The effects of these injuries cause plaintiff to experience a constant ringing in her ears, headaches, forgetfulness, and irritability. Furthermore, as Ms. Kalil ages her condition will deteriorate and she may begin experiencing Alzheimer’s-type problems.
At trial against North Monroe Medical Center, and after plaintiff had rested, defendant attempted to bring up the third-party fault of Drs. Knight and Sampogna-ro. In response to this attempt, plaintiff made an oral motion in limine to exclude specific questions to defendant’s expert concerning any breach of the standard of care of those two doctors and to strike any such defense from the jury verdict form. After hearing from both parties, the trial court ruled in plaintiffs favor and North Monroe Medical Center objected. Defendant, however, failed to make any proffer of the excluded testimony.
The jury returned a verdict finding North Monroe Medical Center negligent and responsible for the injuries Ms. Kalil suffered. The jury awarded her general damages in the amounts of $50,000 for past, present and future physical pain and suffering, $125,000 for past, present and future mental pain and suffering, $125,000 for loss of enjoyment of life, and $150,000 for permanent disability. There was also a special damages award in the amount of $38,274.21 for past medical bills. North Monroe Medical | ^Center was to pay $100,000 and the remaining $383,274.21 was to be paid by the Patients’ Compensation Fund (“PCF”).
Following the return of the jury’s verdict defendant filed a motion for judgment notwithstanding the verdict and, alternatively, motion for a new trial. The motion addressed only the general damage award. After hearing arguments the trial court denied the motions.
Following the trial court’s denial of its motions for JNOV and new trial, defendant has appealed.

Discussion

Motions for JNOV/New Trial

In the case sub judice, defendant’s motions for JNOV/new trial addressed only the jury’s general damage award. It is defendant’s contention that the jury’s determination of damages and the trial court’s denial of defendant’s motions was clearly wrong and an abuse of discretion. Thus, it is incumbent on us to evaluate the general damage award.[1]

*514
|4General Damages

In the instant ease, we have closely reviewed the record to determine whether the jury’s award of damages was so excessive that it constituted an abuse of discretion. After analyzing the facts and circumstances of this case, we find that the jury’s assessment of damages was not an abuse of its vast discretion and, consequently, that the trial court neither committed manifest error by denying defendant’s motion for JNOV nor abused its great discretion by denying defendant’s motion for a new trial. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Theriot v. Allstate Insurance Co., 625 So.2d 1337 (La.1993).
The evidence shows that the injuries Ms. Kalil sustained affected her physically, mentally, and emotionally. According to all of the physicians that testified, Ms. Kalil suffers and will continue to endure headaches, forgetfulness, irritability, hearing loss, and tinnitus as a result of her brain injuries. During his testimony, Dr. Danna, an otorhinolaryngologist, stated the following with regards to some of Ms. Kalil’s injuries:
[Wjhat makes [sic] this lady more complicated now, it’s not just the hearing loss this lady has. This lady has a post concussion effect. She has torn her bridging veins and now she has a post concussion effect [sic] of headaches. She no longer remembers. Her personality is now changed. She’s a totally different person ... [T]his lady has a | r,temporal bone injury on the opposite side, but it also applies to the opposite ear ... It’s just like whiplash injuries ... [T]hey can get the same identical injury, dizziness, hearing loss, tinnitus, plus a post concussion effect ...
In addition to the physicians that testified, Ms. Kalil, her friends, and her coworkers testified about the adverse effects that came about as a result of her injury. Ms. Kalil’s friends and co-workers testified that she no longer has the ability to work as she did before her accident, she tires more easily, she “flies off the handle,” she forgets names and details, and she has trouble conversing as a result of her hearing loss. Ms. Kalil testified that she has trouble sleeping, and when she does she has to sleep with her good ear up in case there is an intruder. She also testified that there is constant ringing in her ears, she has become depressed and moody, and she often forgets and repeats things.
Based on the extent of the injuries Ms. Kalil suffered and the fact that her condition will continue to worsen over time, we find that the jury’s award of $50,000 for past, present, and future physical pain and suffering, $125,000 for past, present and *515 future mental pain and suffering, $125,000 for loss of enjoyment of life, and $150,000 for permanent disability was not an abuse of discretion.

Excluded Testimony and Jury Interrogatories

Defendant contends that the trial court erred in limiting the questioning of its expert witness and in not submitting the issue of third-party fault to the jury.
When the trial court excludes or limits the testimony of a witness, a proffer can be made. La. C.C.P. art. 1636. It is incumbent upon the party | fiwho contends its evidence was improperly excluded to make a proffer, and if it fails to do so, it waives its right to complain of the exclusion on appeal. Goodwin v. Goodwin, 618 So.2d 579 (La.App. 2d Cir.1993), writ denied, 623 So.2d 1340 (La.1993); Engineered Mechanical Services, Inc. v. Langlois, 464 So.2d 329 (La.App. 1st Cir.1984), writ denied, 467 So.2d 531 (La.1985).
In cases to recover damages for injury, any party may request that the court submit to the jury special written questions inquiring as to whether another party or nonparty was at fault, and the court shall do so if appropriate under the facts adduced at trial. La. C.C.P. art 1812(C)(2)(a). The determination of whether the fault of a nonparty should be included in a jury interrogatory is left to the discretion of the trial court. Guidroz v. State, Through Dept. of Transportation and Development, 94-0253 (La.App. 1st Cir.12/22/94), 648 So.2d 1361; Wilson v. Transportation Consultants, Inc., 04-0334 (La.App. 4th Cir.03/02/05), 899 So.2d 590, writ denied, 05-0827 (La.05/13/05), 902 So.2d 1025.
During the trial, defendant hoped to establish the third-party fault of Drs. Knight and Sampognaro through the testimony of its expert witness, Dr. Mason. The trial court, however, precluded defendant from asking any questions concerning the doctors’ standard or care and the possible breach of that standard of care. Defendant contends that this limitation of Dr. Mason’s testimony was erroneous. Dr. Mason’s testimony, however, was not proffered, and as such, defendant cannot now claim that the limitation of his testimony was erroneous. Thus, without any testimony establishing a | possible breach of Drs. Knight’s and Sampognaro’s standard of care, the trial court was well within its discretion to exclude the potential fault of a nonparty from the jury interrogatories.
Accordingly, we find that this assignment of error is without merit.

Costs

Finally, defendant contends that the trial court erred in: the amount of expert witness fees awarded; the award of deposition costs; and failing to reduce the costs of copies and exhibits to those used at the trial.
La. R.S. 13:4533 states:
The costs of the clerk, sheriff, witness’ fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.
A trial court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La. C.C.P. art.1920. The trial court’s assessment of costs is afforded great discretion and absent an abuse of that discretion may not be reversed on appeal. Joe Broadway, Inc., Wholesale Fish v. Dickson, 582 So.2d 967 (La.App. 2d Cir.1991); Succession of Batton v. Prince, 384 So.2d 506 (La.App. 2d Cir.1980); Garlepied Transfer, Inc. v. Guaranty Bank and Trust Co., 94-549 (La.App. 5th Cir.05/30/95), 656 So.2d 728, writ denied, 95-1638 (La.10/06/95), 661 So.2d 470. De *516 fendant did not prevail at trial and has failed to show that the trial court abused its great discretion when it assessed costs. Furthermore, the trial court was in a better position than- this Court to determine what was equitable and what fees were reasonable. Therefore, we do not find that the trial-court was erroneous when it taxed costs against defendant.
| ^Conclusion
For the foregoing reasons, the jury verdict and trial court judgments in favor of plaintiff are AFFIRMED at defendant’s cost.

. Louisiana Code of Civil Procedure art. 1811(F) states that a motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues. A JNOV is not warranted unless the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. Joseph v. Broussard Rice Mill, Inc., 00-0628 (La. 10/30/00), 772 So.2d 94. Furthermore, if the evidence opposed to the motion is of such quality and weight that reasonably fair-minded persons in the exercise of impartial judgment could reach different conclusions, the motion for JNOV should be denied. Joseph, supra; Williams v. State ex rel. Dept. of Social Services, 37,923 (La.App.2d Cir.01/28/04), 865 So.2d 908, writ denied, 04-0514 (La.04/08/04), 870 So.2d 276. In making its determination, the trial court may not evaluate the credibility of the witnesses or substitute its judgment of the facts for that of the jury. Joseph, supra; Gibson v. Bossier City General Hospital, 594 So.2d 1332 (La.App. 2d Cir.1991). The trial court should also consider all the evidence in the light most advantageous to the non-moving party, giving to this party the benefit of every legitimate and reasonable inference that could have been drawn from the evidence. Gibson, supra. In reviewing a trial court's decision to *514 deny a JNOV, the appellate court must determine whether the trial court committed manifest error in reaching its determination. Gibson, supra; Morehead v. Ford Motor Co., 29,399 (La.App.2d Cir.05/21/97), 694 So.2d 650, writ denied, 97-1865 (La. 11/07/97), 703 So.2d 1265.
In accordance with La.Code of Civil Procedure art. 1811(A)(2), a motion for JNOV may be joined with an alternative motion for a new trial. The motion for a new trial requires a less stringent test than that used for a JNOV since granting a motion for a new trial does not deprive the parties of their right to have all disputed issues resolved by a jury. Davis v. Wal-Mart Stores, Inc., 00-0445 (La. 11/28/00), 774 So.2d 84; Gibson, supra. Unlike the standard applicable to a motion for JNOV, the trial court may evaluate evidence without favoring any party, draw its own inferences and conclusions, and assess the credibility of the witnesses when determining whether to grant or deny a motion for a new trial. Davis, supra; Morehead, supra. A trial court’s discretion in ruling on a motion for a new trial is great, and its decision should not be reversed unless there has been an abuse of that discretion. Joseph, supra; Davis, supra; Gibson, supra; Morehead, supra.